IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
STATE OF CALIFORNIA ex rel.      )
BARRETT R. BATES, qui tam        )   2:10-cv-01429-GEB-CMK
plaintiff, on behalf of real     )
parties in interest, ALAMEDA     )
COUNTY, et al.,                  )
                                 )   ORDER GRANTING EACH
                                 )   DEFENDANT'S DISMISSAL MOTION
             Plaintiff,          )   FOR LACK OF SUBJECT MATTER
                                 )   JURISDICTION*
     v.                          )
                                 )
MORTGAGE ELECTRONIC REGISTRATION )
SYSTEM, INC., et al.,            )
                                 )
             Defendants.         )
_____)
```

Relator Plaintiff Barrett R. Bates sues Defendants on behalf of numerous counties in the State of California. Each Defendant moves for dismissal of this qui tam action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Each motion challenges Plaintiff's First Amended Complaint, which is comprised of two claims under the California False Claims Act ("CFCA"). (First Am. Compl. ("FAC") ¶ 18.) The gravamen of Plaintiff's claims is that "Defendants made false representations in order to avoid payment in full of all recording fees reflecting the establishment and/or transfer of secured interests in real property in the State" of California by naming the Mortgage Electronic Registration System ("MERS" or "MERS System") as a beneficiary in recorded mortgage documents. Id. 2:20-22.

---

\* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

1  Also pending is Plaintiff's motion for leave to file a Second
2 Amended Complaint, which was filed after each Defendant's dismissal
3 motion was submitted for decision. Plaintiff's motion to file his
4 proposed Second Amended Complaint also has been submitted for decision.
5 Plaintiff alleges in his proposed Second Amended Complaint the same two
6 CFCA claims alleged in the First Amended Complaint, as well as a third
7 CFCA claim not alleged in the First Amended Complaint.
8  Each Defendant argues under Rule 12(b)(1) that this Court
9 lacks subject matter jurisdiction over Plaintiff's qui tam action
10 because a public disclosure provision in the CFCA bars this action.
11 Since the public disclosure bar requires dismissal of this action,
12 neither the merits of the Rule 12(b)(6) motions or Plaintiff's motion to
13 amend are decided.

### I. Legal Standard

15  A motion to dismiss for lack of subject matter jurisdiction
16 may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d
17 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts
18 that the allegations contained in a complaint are insufficient on their
19 face to invoke federal jurisdiction. By contrast, in a factual attack,
20 the challenger disputes the truth of the allegations that, by
21 themselves, would otherwise invoke federal jurisdiction." Id. "Once the
22 moving party has converted the motion to dismiss into a factual motion
23 by presenting affidavits or other evidence properly before the court,
24 the party opposing the motion must furnish affidavits or other evidence
25 necessary to satisfy its burden of establishing subject matter
26 jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, 343
27 F.3d 1036, 1040 n.2 (9th Cir. 2003). "With a factual Rule 12(b)(1)
28 attack . . . , a court may look beyond the complaint to matters of

[which judicial notice is taken] without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiffs' allegations." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); see also U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."). Each Defendant's Rule 12(b)(1) motion is a "factual attack" on Plaintiff's First Amended Complaint since each motion relies on evidence not alleged in the First Amended Complaint.

Each Rule 12(b)(1) dismissal motion includes a request that judicial notice be taken of numerous documents for the purpose of determining "that the matters at issue in this lawsuit were in the public realm for many years before Plaintiff brought this action." (Req. for Judicial Notice in Supp. of Certain Defs.' Mot. to Dismiss Pl.'s First Am. Compl. ("Defs.' RJN") 5:8-12.) However, in light of the content of the "news articles" and "published articles" attached as Tab B and Tab C to the judicial notice, and court decisions attached as Tab D to the notice, these are the only documents of which judicial notice is taken for the purpose stated in the judicial notice requests. See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those [publications] were in fact true.") (internal quotation makrs omitted).

///
///

## II. Factual Allegations

The salient allegations in Plaintiff's First Amended Complaint are the following:

> Defendants recorded or caused to be recorded deeds of trust/mortgages and other documents which identified MERS as the 'beneficiary,' which MERS is not, or the 'nominee of the lender' and 'lender's successors and assigns,' which MERS never was, and as holding 'legal title' when the legal title rested with the Trustee in this State which uses a deed of trust to secure a mortgage; thereby, the Defendants falsely named, appointed, and or characterized MERS in any of the afore-named capacities in numerous documents recorded throughout the counties of the State over the last ten (10) years.

(FAC ¶ 15.)

> The designation of MERS as a beneficiary or nominee of the lender on a deed of trust was a false designation of and/or by MERS in numerous ways, namely: (1) neither MERS nor the 'lender so designated was the true lender; (2) MERS was not the nominee of the true lender of the funds for which the promissory note was executed; (3) MERS did not collect or distribute payments, pay escrow items, hold client funds on deposit, pay insurance for clients or borrowers, or pay taxes; (4) MERS had no right to collect money on the note or to receive any proceeds or value from any foreclosure; and (5) the name 'MERS' does not appear on any promissory note secured by real estate in the State.

Id. ¶ 49.

> But for the false assertions and claims in the recorded documents, MERS and/or the other Defendants would have recorded documents and paid county governments fees that accurately reflected the status of the respective loans and documents.

Id. ¶ 29.

> The process of falsely using MERS as the beneficiary under a security instrument to avoid naming the true owner of the applicable Note was devised to eliminate recording of documents affecting interests in real estate.

Id. ¶ 43.

4

## III. Discussion

> The [CFCA] . . . erects a jurisdictional bar to qui tam actions that do not assist the government in ferreting out fraud because the fraudulent allegations or transactions are already in the public domain. Government Code section 12652, subdivision (d)(3)(A) provides, in part, that "[n]o court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a [civil hearing, or] report . . . by the news media, unless . . . the person bringing the action is an original source of the information." Where there has been a public disclosure the governmental authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose.
>
> The jurisdictional bar is triggered whenever a plaintiff files a qui tam complaint containing allegations or describing transactions substantially similar to those already in the public domain so that the publicly available information is already sufficient to place the government on notice of the alleged fraud. The fraud, however, need not be explicitly alleged to constitute public disclosure. Of course, whether or not the Government was actually pursuing the allegations at issue in this case is irrelevant to the question of whether said allegations were publicly disclosed for purposes of the [CFCA]. All that is required is a finding that the publicly disclosed allegations were sufficient to put the government on notice of the alleged [CFCA] violations.

State ex rel. Grayson v. Pac. Bell Tel. Co., 142 Cal. App. 4th 741, 748 (2006) (internal citations and quotations marks omitted).

The term "news media" in section 12652(d)(3)(A) has been construed as "encompass[ing] publication of information in scholarly or scientific periodicals[,]" since "[n]o principle of statutory construction or public policy would compel a cramped reading of the term 'news media' or the imposition of a judicially created limit of 'news media' to encompass only the newspaper context." Id. at 754-55. If substantially similar information already exists in the public domain,

then the question is "whether the relator is an original source of the information exposing the fraud." Id. at 749.

The following table is a comparison of Plaintiff's allegations and certain publicly disclosed information in published articles and a court decision, of which judicial notice has been taken:

| Plaintiff's Allegations Concerning MERS Being Named on Mortgage Documents | Publicly Disclosed Information Concerning MERS Being Named on Mortgage Documents |
|---|---|
| "Defendants recorded or caused to be recorded deeds of trust/mortgages and other documents which identified MERS as the 'beneficiary,' which MERS is not, or the 'nominee of the lender' and 'lender's successors and assigns,' which MERS never was, and as holding 'legal title' when the legal title rested with the Trustee in this State which uses a deed of trust to secure a mortgage; . . ." (FAC ¶ 15.)<br><br>"The designation of MERS as a beneficiary or nominee of the lender on a deed of trust was a false designation of and/or by MERS in numerous ways, namely: (1) neither MERS nor the 'lender so designated was the true lender; (2) MERS was not the nominee of the true lender of the funds for which the promissory note was executed; (3) MERS did not collect or distribute payments, pay escrow items, hold client funds on deposit, pay insurance for clients or borrowers, or pay taxes; (4) MERS had no right to collect money on the note or to receive any proceeds or value from any foreclosure; and (5) the name 'MERS' does not appear on any promissory note secured by real estate in the State." (FAC ¶ 49.) | "Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages." Fremont Inv. & Loan v. Ready Products Corp., No. E044050, 2008 WL 2673354, at *6 n.3 (Cal. App. 4th Dist. July 9, 2008) (internal quotation marks omitted) (attached as Exhibit 42 to Defs.' RJN).<br><br>"The borrower executes a traditional paper mortgage naming the lender as the mortgagee, and the lender executes an assignment of the mortgage to MERS. Both documents are executed according to state law and recorded in the public land records, making MERS the mortgagee of record. . . . In states where deeds of trust are used instead of mortgages, MERS is typically named as beneficiary of the deed of trust." R.K. Arnold, Yes, There is Life on MERS, 11 PROB. & PROP. 33, 34 (1997) (attached as Exhibit 40 to Defs.' RJN).<br><br>"The [MERS System] will require a paper mortgage to be executed and recorded, as is done currently. |

6

| | |
|---|---|
| | In addition, it also will require a recorded assignment in favor of MERS, making MERS mortgagee of record. Consistent with mortgage participations where a lead participant holds legal title on behalf of the other participants, and with secondary market transactions where mortgage servicers hold legal title on behalf of their investors, MERS will serve as mortgagee of record in a nominee capacity only." Phyllis K. Slesinger & Daniel Mclaughlin, Mortgage Electronic Registration System, 31 IDAHO L. REV. 805, 806-07 (1995) (attached as Exhibit 39 to Defs.' RJN). |
| **Plaintiff's Allegations Concerning the MERS System Eliminating the Need to Record Assignments and Pay Recording Fees** | **Publicly Disclosed Information Concerning the MERS System Eliminating the Need to Record Assignments and Pay Recording Fees** |
| "But for the false assertions and claims in the recorded documents, MERS and/or the other Defendants would have recorded documents and paid county governments fees that accurately reflected the status of the respective loans and documents." (FAC ¶ 29.)<br><br>"The process of falsely using MERS as the beneficiary under a security instrument to avoid naming the true owner of the applicable Note was devised to eliminate recording of documents affecting interests in real estate." (FAC ¶ 43.) | "The lenders can then sell these interests to investors without having to record the transaction in the public record." Fremont Inv. & Loan, 2008 WL 2673354, at *6 n.3.<br><br>"Once MERS is established as the mortgagee of record, all subsequent transfers of ownership would be recorded electronically, eliminating the need to physically prepare, deliver, record, and track assignment documents. The estimated cost savings for assignment processing for a single transfer would be an average of $45.50 per loan." Phyllis K. Slesinger & Daniel Mclaughlin, Mortgage Electronic Registration System, 31 IDAHO L. REV. at 812-13.<br><br>"MERS members record new mortgages and mortgage assignments in a centralized clearinghouse rather than with the recorder's office in the county where the property is located." Steve Stanek, Recorder |

7

| | |
|---|---|
| | Wants Mortgage Data Kept Accessible, CHI. TRIB., Aug. 31, 1999, at MC3 (attached as Exhibit 19 to Defs.' RJN). |

This comparison reveals that Plaintiff's allegations in his First Amended Complaint "are substantially similar to information already in the public domain." Grayson, 142 Cal. App. 4th at 749. Specifically, Plaintiff's allegations and the publicly disclosed information each state that MERS is named as a beneficiary in mortgage documents, and that the MERS System allows a party to avoid the recordation of mortgage documents and payment of corresponding recording fees.

Plaintiff insists that despite the public disclosures, his action is not barred since he is the "first person to discover [the] fraudulent scheme," to "piece[] together the intricacies of the impact of the false statement upon the sale of notes in the secondary mortgage market," and to "apprehend[] the significance of [Defendants'] failure to properly transfer title." (Pl.'s Omnibus Opp. to Defs.' Mot. to Dismiss First Am. Compl. 8:18-19, 10:9-12.) However, an action is barred under the public disclosure provision when the prior public disclosures are "sufficient to place the government on notice of the alleged fraud" or "practice prior to the filing of the qui tam action." Grayson, 142 Cal. App. 4th at 748, 752. Therefore:

> '[a] relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed. . . . If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a qui tam action cannot proceed.'

1  Id. (quoting United States ex rel. Findley v. FPC-Boron Emps.' Club, 105
2  F.3d 675, 688 (D.C. Cir. 1997). Since Plaintiff's complaint merely
3  echoes prior public disclosures that were sufficient to place the
4  government on notice of the matters about which Plaintiff complains, the
5  public disclosure bar applies.

6  "Having determined the allegations or transactions upon which
7  the qui tam complaint is based were in the public domain before the
8  action was filed, [the Court] next determine[s] whether [it] has
9  jurisdiction because plaintiff is an original source of the
10 information." Id. at 755. The CFCA defines "original source" in
11 pertinent part as follows:

12      [A]n individual who has direct and independent
        knowledge of the information on which the
13      allegations are based, who voluntarily provided the
        information to the state or political subdivision
14      before filing an action based on that information,
        and whose information provided the basis or
15      catalyst for the investigation, hearing, audit, or
        report that led to the public disclosure.
16

17 CAL. GOV'T CODE § 12652(d)(3)(B). Defendants argue Plaintiff is not an
18 original source of the publicly disclosed information. Plaintiff's First
19 Amended Complaint contains the following original source allegation:

20      [Plaintiff is] an original source of information
        and authorized to bring this action . . . because
21      Plaintiff . . . has worked in the secondary
        mortgage market business and, during the course of
22      his work in June 2009, became aware that the
        defendants were making false statements in order to
23      avoid or decrease payments owed to [counties in
        California].
24

25 (FAC ¶ 1.) However, the above referenced articles and court opinions
26 were published and/or issued before June of 2009. Accordingly, Plaintiff
27 could not be a "catalyst . . . that led to the public disclosure." CAL.
28

GOV'T CODE § 12652(d)(3)(B). Therefore, Plaintiff is not an original source of publicly disclosed information.

Since Plaintiff's CFCA claims are based upon publicly disclosed information, and Plaintiff is not an original source of the information, the Court is without jurisdiction over Plaintiff's action. Therefore, each Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

Further, since this action is dismissed for lack of subject matter jurisdiction, Plaintiff's motion for leave to file a Second Amended Complaint is not considered. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. 2011) (dismissing action for lack of subject matter jurisdiction since complaint did not show existence of jurisdiction); Am. Land Title Ass'n v. Great Am. Ins. Co., No. C 05-4365 PJH, 2006 WL 1329782, at *5 (N.D. Cal. May 16, 2006) ("[W]here the existence of subject matter jurisdiction is not disclosed in the original complaint, the court lacks power to grant leave to amend or to do anything except dismiss the case.") (citing Morongo Band of Mission Indians v. Calif. State Board of Equalization, 858 F.2d 1376, 1381 n.2 (9th Cir.1988)).

**IV. Conclusion**

For the stated reasons, this action is dismissed with prejudice, and shall be closed.

Dated: March 10, 2011

GARLAND E. BURRELL, JR.
United States District Judge

10